**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS PENSION FUND; | ) | |
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS HEALTH AND | ) | |
| WELFARE FUND; and CHARLES A. | ) | Case No. 26-cv-222 |
| WHOBREY, as Trustee, | ) | |
| | ) | Judge |
| *Plaintiffs,* | ) | |
| | ) | Magistrate Judge |
| v. | ) | |
| | ) | |
| STANDARD FORWARDING FREIGHT, | ) | |
| LLC, a Georgia limited liability company, | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health and Welfare Fund" and, together with the Pension Fund, the "Funds"), and Charles A. Whobrey, one of the Pension Fund's and the Health and Welfare Fund's present trustees, allege as follows:

**JURISDICTION AND VENUE**

1.      This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and is a suit to recover employer contributions owed to the Funds by Defendant in accordance with applicable collective bargaining and trust fund agreements.

2.      This Court has jurisdiction over this action under 29 U.S.C. § 1132(e)(1).

3.      Venue lies in this Court under 29 U.S.C. § 1132(e)(2), in that the Funds are "employee benefit plans" as that term is defined in ERISA and are administered at their principal

place of business in Chicago, Illinois. Venue is also proper in this Court pursuant to the forum selection clauses contained in the Pension Fund's Trust Agreement and the Health and Welfare Fund's Trust Agreement (collectively, the "Trust Agreements") which designate this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4.     The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5.     The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6.     The Health and Welfare Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

7.     The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

8.     Plaintiff Charles A. Whobrey is a trustee and "fiduciary" of the Funds as that term is defined in ERISA. Pursuant to 29 U.S.C. § 1132(a)(3), Charles A. Whobrey is authorized to

bring this action on behalf of the Funds and their participants and beneficiaries in his capacity as a trustee and fiduciary.

9.      Defendant Standard Forwarding Freight, LLC ("Standard Forwarding") is a limited liability company organized under the laws of the State of Georgia. Standard Forwarding is an "employer" and a "party-in-interest" as those terms are defined by 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

10.     Local Union No. 120 of the IBT ("Local 120") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

11.     Local Union No. 135 of the IBT ("Local 135") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

12.     Local Union No. 200 of the IBT ("Local 200") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

13.     Local Union No. 238 of the IBT ("Local 238") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

14.     Local Union No. 325 of the IBT ("Local 325") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

15. Local Union No. 364 of the IBT ("Local 364") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

16. Local Union No. 371 of the IBT ("Local 371") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

17. Local Union No. 710 of the IBT ("Local 710" and, together with Local 120, Local 135, Local 200, Local 238, Local 325, Local 364, and Local 371, the "Applicable IBT Local Unions") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Standard Forwarding and employees of other employers in industries affecting interstate commerce.

18. The Teamsters National Freight Industry Negotiating Committee (the "IBT Union Committee") is a labor organization that collectively bargains on behalf of IBT-affiliated local unions in relation to the freight industry.

19. During all relevant times, Standard Forwarding on the one hand and the IBT Union Committee and the Applicable IBT Local Unions on the other hand have been parties to a collective bargaining agreement and certain supplements thereto (collectively, the "CBA"). Pursuant to the CBA, Standard Forwarding is required to make contributions to: both Funds on behalf of its covered employees represented by the Applicable IBT Local Unions other than Local 200; and the Pension Fund on behalf of its covered employees represented by Local 200.

20. Standard Forwarding on the one hand and the IBT Union Committee and the Applicable IBT Local Unions on the other hand are also parties to a participation agreement (the "Participation Agreement") under which Standard Forwarding is required to pay contributions to:

both Funds on behalf of its covered employees represented by the Applicable IBT Local Unions other than Local 200; and the Pension Fund on behalf of its covered employees represented by Local 200.

21.     Standard Forwarding agreed to be bound by the terms of the Trust Agreements and all rules and regulations promulgated by the Funds' trustees under the Trust Agreements.

22.     Under Article III, Section 1 of the Trust Agreements, Standard Forwarding was required to "remit continuing and prompt contributions to the [Funds] as required by the applicable collective bargaining agreement, participation agreement, this [Trust] Agreement and/or…applicable law…"

23.     Article XIV, Section 4 of the Pension Fund's Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions . . . prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater) . . . . Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions . . . shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate

established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

24.     Similarly, Article XI, Section 4 of the Health and Welfare Fund's Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

25.     The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks

worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

## **STATUTORY AUTHORITY**

26.    29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

27.    29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of--

(i)    interest on the unpaid contributions, or

(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## COUNT I - DELINQUENT CONTRIBUTIONS TO THE PENSION FUND

28.     Plaintiffs hereby reallege and incorporate the allegations made in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29.     Standard Forwarding reported the work history of its covered employees to the Pension Fund for the period of October 26, 2025 through November 29, 2025.

30.     Standard Forwarding has breached the provisions of ERISA, the CBA, the Participation Agreement, and the Pension Fund's Trust Agreement by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund based upon the employee work history reported to the Pension Fund by Standard Forwarding for the period of October 26, 2025 through November 29, 2025.

31.     Despite demands that Standard Forwarding perform its statutory and contractual obligations with respect to making contributions to the Pension Fund, Standard Forwarding has neglected and refused to pay the full amounts that are due as a consequence of the conduct set forth in paragraph 30.

32.     Standard Forwarding owes the Pension Fund at least $220,935.00 for unpaid contributions (not including interest) for the period of October 26, 2025 through November 29, 2025 as a result of the conduct set forth in paragraph 30.

**WHEREFORE**, the Pension Fund requests the following relief:

(a)     A judgment against Defendant in favor of the Pension Fund, pursuant to 29 U.S.C. § 1132(g)(2), for:

(i)     all unpaid contributions owed to the Pension Fund from October 26, 2025 through the date of the judgment, including contributions for post-

November 29, 2025 periods, which have not yet become due as of the date of this Complaint;

(ii)     interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

(iii)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv)     attorney's fees and costs.

(b)     Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)     Such further or different relief as this Court may deem proper and just.

## COUNT II - DELINQUENT
## CONTRIBUTIONS TO THE HEALTH AND WELFARE FUND

33.     Plaintiffs hereby reallege and incorporate the allegations made in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

34.     Standard Forwarding reported the work history of its covered employees to the Health and Welfare Fund for the period of September 28, 2025 through November 29, 2025.

35.     Standard Forwarding has breached the provisions of ERISA, the CBA, the Participation Agreement, and the Health and Welfare Fund's Trust Agreement by failing to pay

all of the contributions (and interest due thereon) owed to the Health and Welfare Fund based upon the employee work history reported to the Health and Welfare Fund by Standard Forwarding for the period of September 28, 2025 through November 29, 2025.

36. Despite demands that Standard Forwarding perform its statutory and contractual obligations with respect to making contributions to the Health and Welfare Fund, Standard Forwarding has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 35.

37. Standard Forwarding owes the Health and Welfare Fund at least $497,173.40 for unpaid contributions (not including interest) for the period of September 28, 2025 through November 29, 2025, as a result of the conduct set forth in paragraph 35.

**WHEREFORE**, the Health and Welfare Fund requests the following relief:

(a) A judgment against Defendant in favor of the Health and Welfare Fund, pursuant to 29 U.S.C. § 1132(g)(2), for:

(i) all unpaid contributions owed to the Health and Welfare Fund from September 28, 2025 through the date of the judgment, including contributions for post-November 29, 2025 periods, which have not yet become due as of the date of this Complaint;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

       (iii)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

       (iv)    attorney's fees and costs.

(b)    Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)    Such further or different relief as this Court may deem proper and just.

 

Respectfully submitted,

*/s/ Gabrielle Pilgrim*
Gabrielle Pilgrim (#6346422)
Central States Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
Telephone: (847) 939-2508
Fax: (847) 518-9797
gpilgrim@centralstatesfunds.org

January 8, 2026             *ATTORNEY FOR PLAINTIFFS*